IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39553

| MAXWELL HOFFMAN, | ) | 2013 Unpublished Opinion No. 517 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: May 30, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Owyhee County.  Hon. Gregory M. Culet, District Judge.

Order dismissing petition for post-conviction relief, <u>affirmed</u>.

Silvy Law Office, Ltd.; Greg S. Silvey, Star, for appellant.

Hon. Lawrence G. Wasden, Attorney General; L. Lamont Anderson, Deputy Attorney General, Boise, for respondent.  L. Lamont Anderson argued.

---

GRATTON, Judge

Maxwell Hoffman appeals from the district court's summary dismissal of his petition for post-conviction relief.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

The facts leading to Hoffman's conviction for first degree murder are summarized in *State v. Hoffman*, 123 Idaho 638, 851 P.2d 934 (1993):

> [O]n September 10, 1987, Denise Williams (Williams), a confidential informant working for Nampa narcotic officers, made a controlled drug buy from Richard Holmes (Holmes) which resulted in the arrest of Holmes.  During the arrest it became apparent that Williams was working for the police.  Holmes was subsequently released from custody on bail.
>
> Upon Holmes' release, Sam Longstreet, Jr. (Longstreet) and James Slawson (Slawson) arranged for a meeting with Holmes.  Longstreet and Slawson, who were responsible for introducing Williams to Holmes for the purpose of purchasing drugs, testified that they met with Holmes in an effort to assure him that they had nothing to do with his arrest.  They further testified that

1

when they arrived at Holmes' residence, two other men, defendant Hoffman and Ronald Wages (Wages), were present. Both Wages and Hoffman worked for Holmes as part of his drug operation, and both men were heavy drug users themselves. During this meeting, outside the presence of Hoffman and Wages, Holmes asked Longstreet and Slawson if they would kill Williams for her involvement in his arrest and to prevent her from testifying at Holmes' preliminary hearing on the drug charges. Longstreet and Slawson stated that they were incapable of killing Williams but would help in other ways. In response, Holmes' stated that if it were up to him he would cut Williams' throat and "let her bleed like an animal."

The next day, Longstreet and Slawson returned to Holmes' house. Hoffman and Wages were again present. Holmes had Hoffman conduct a strip search of Longstreet and Slawson to ensure that they were not wired and working for the police. During this meeting, an agreement was reached between Holmes, Longstreet and Slawson wherein Longstreet and Slawson were to kidnap Williams and take her to a spot in Owyhee County known as the Boy Scout Camp. Holmes, Wages, Longstreet and Slawson then drove to the Boy Scout Camp where they planned the details of the kidnapping. It was agreed that Longstreet and Slawson would call Holmes once they had kidnapped Williams and that Wages would be waiting at the camp when they arrived. It was also agreed that Williams was to be tied up to a tree in the area until Holmes arrived.

The following evening, Holmes and Hoffman took Wages to the Boy Scout Camp where they all ingested drugs. Holmes and Hoffman then left, leaving Wages at the [c]amp. Longstreet and Slawson arrived at the camp sometime later with Williams. Longstreet testified that he and Slawson tricked Williams into going with them by telling her that they would take her to buy alcohol. The three drove around drinking and ingesting drugs, stopping only once to allow Longstreet to call Holmes and leave a message that he had Williams. Longstreet and Slawson then pretended to get lost and eventually made their way to the Boy Scout Camp as was earlier planned. Upon their arrival at the camp, Wages, who was wearing a bandanna and carrying a sawed off shotgun, ordered Longstreet and Slawson to strip Williams of her clothes and to tie her up. The two men complied with Wages' order. Longstreet and Slawson then left the camp, leaving Williams with Wages.

Hoffman arrived at the camp a short time later. Hoffman and Wages loaded Williams into a car and met Holmes at the old ION highway cutoff. Holmes kicked Williams in the head and told her she was "a dead bitch." Holmes left and subsequently returned in a brown Nissan four-wheel drive and told Hoffman and Wages, "You know what to do." Holmes then left again.

Hoffman and Wages then took Williams in the Nissan. After driving around for several hours, they stopped the vehicle in Delamar, Idaho. Wages and Hoffman instructed Williams to write two letters to the press, which were intended to exonerate Holmes of the drug charges. After the letters were written, Williams was taken to a cave outside of Silver City, Idaho. Hoffman took Williams into the cave and slashed her throat with a knife. As Hoffman was returning to the vehicle, Wages spotted Williams crawling up an embankment

2

near the cave.  Wages then pursued Williams and stabbed her under the arm with Hoffman's knife.  Thinking Williams was dead, both men buried her with rocks.  It would later be determined that the cause of death was a crushing blow by a rock to [Williams'] head.

Upon [Williams'] disappearance, a police investigation ensued.  Eventually, Longstreet and Slawson agreed to provide the police with information regarding [Williams'] disappearance in exchange for a recommendation of a year in jail for kidnapping.  Based on this information, Holmes and Wages were indicted on charges of conspiracy to commit murder.  In an effort to secure a plea agreement, Holmes led the police to Williams' body.  The conspiracy charges against Holmes were vacated, but Holmes was subsequently charged with aiding and abetting first degree murder on August 22, 1988.

After Williams' body was found, Wages confessed to the killing and became a cooperative witness for the state and agreed to give a full account of how it occurred.  Wages and Hoffman were then charged with first degree murder in Owyhee County.  Hoffman went to preliminary hearing on September 14, 1988, where Wages was the principal witness for the State.  Hoffman called Holmes as a witness, but Holmes refused to testify, claiming the fifth amendment right against self-incrimination.

Hoffman's case proceeded to trial where a jury found him guilty of first degree murder.

*Id.* at 639-41, 851 P.2d at 935-37 (footnote omitted).  Hoffman was sentenced to death.  He filed a petition for post-conviction relief, which the district court denied.  The Idaho Supreme Court affirmed Hoffman's conviction, death sentence, and the denial of post-conviction relief.  Thereafter, Hoffman filed successive petitions for post-conviction relief in 1995, 2001, and 2002.  Each petition was dismissed.

Hoffman also commenced federal habeas corpus proceedings.  Hoffman's federal court proceedings transpired from 1994 to 2008 and resulted in the federal district court granting Hoffman sentencing relief.  In 2008, pursuant to a federal court order, the district court held a new sentencing hearing in which Hoffman called Wages as a witness.  Wages recanted statements he previously gave to police officers and recanted his prior testimony.  Wages testified that he and Holmes killed Williams while Hoffman was home babysitting.  The district court found that Wages' testimony was not "remotely credible or believable."  The district court imposed a determinate life sentence without the right to parole.  Hoffman then filed an Idaho Criminal Rule 35 motion which the district court denied.  Hoffman appealed his sentence and the denial of his Rule 35 motion.  This Court affirmed the decision of the district court in *State v.*

*Hoffman*, Docket No. 35941 (Ct. App. 2009) (unpublished), and issued the remittitur on February 2, 2010.

On September 30, 2010, Hoffman filed a pro se petition for post-conviction relief. He was appointed counsel and his counsel filed an amended petition for post-conviction relief. The petition claimed that Hoffman was innocent and that Wages' recanted testimony constituted new evidence of material facts that had not previously been presented and heard by the jury. The district court dismissed the petition, finding that the petition was not timely filed. Hoffman timely appeals.

## II.

## ANALYSIS

### A.        Standard of Review

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of facts, together with any affidavits submitted, that there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283,

1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

B.    **Successive Petition**

Hoffman claims that the district court erred when it denied his successive petition for post-conviction relief on the grounds of timeliness. If an initial post-conviction action was timely filed, an inmate may file a subsequent petition outside of the one-year limitation period if the court finds a ground for relief asserted which, for sufficient reason, was not asserted or was inadequately raised in the original, supplemental, or amended petition. I.C. § 19-4908. *Charboneau*, 144 Idaho at 904, 174 P.3d at 874. There is no constitutionally protected right to the effective assistance of counsel in post-conviction relief proceedings and such an allegation, in and of itself, is not among the permissible grounds for post-conviction relief. *See Follinus v. State*, 127 Idaho 897, 902, 908 P.2d 590, 595 (Ct. App. 1995); *Wolfe v. State*, 113 Idaho 337, 339, 743 P.2d 990, 992 (Ct. App. 1987). Ineffective assistance of prior post-conviction counsel may, however, provide "sufficient reason" for permitting newly asserted allegations or allegations inadequately raised in the initial petition to be raised in a subsequent post-conviction petition. *Schwartz v. State*, 145 Idaho 186, 189, 177 P.3d 400, 403 (Ct. App. 2008). *See also Palmer v. Dermitt*, 102 Idaho 591, 596, 635 P.2d 955, 960 (1981); *Hernandez v. State*, 133 Idaho 794, 798, 992 P.2d 789, 793 (Ct. App. 1999). Failing to provide a post-conviction petitioner with a meaningful opportunity to have his or her claims presented may be violative of due process. *Schwartz*, 145 Idaho at 189, 177 P.3d at 403; *Hernandez*, 133 Idaho at 799, 992 P.2d at 794. *See also Abbott v. State*, 129 Idaho 381, 385, 924 P.2d 1225, 1229 (Ct. App. 1996);

6

*Mellinger v. State*, 113 Idaho 31, 35, 740 P.2d 73, 77 (Ct. App. 1987). Thus, when a second or successive petition alleging ineffectiveness of the initial post-conviction counsel is filed outside of the initial one-year limitation period, application of the relation-back doctrine may be appropriate. *See Hernandez*, 133 Idaho at 799, 992 P.2d at 794.

Analysis of "sufficient reason" permitting the filing of a successive petition includes an analysis of whether the claims being made were asserted within a reasonable period of time. *Charboneau*, 144 Idaho at 905, 174 P.3d at 875. In determining what a reasonable time is for filing a successive petition, we will simply consider it on a case-by-case basis. *Id.* Therefore, the question is whether the petitioner in the present case filed the successive petition alleging ineffective assistance of prior post-conviction counsel within a reasonable period of time.

In the instant case, pursuant to I.C. § 19-4901(a)(4) and (6), Hoffman's successive petition raised two new claims: (1) that there exists evidence of material facts not previously presented and heard by the jury; and (2) that Hoffman is innocent of the offense.[1] Hoffman's claims are based on Wages' recanted testimony. Hoffman first learned of Wages' recanted testimony through the affidavit of an investigator. The investigator, a member of the capital habeas unit of the Federal Defenders, signed an affidavit dated September 19, 2000, stating that he interviewed Wages and Wages recanted his testimony. The affidavit also stated that the investigator interviewed other individuals who claimed that Wages told them that Hoffman was not involved with the murder. The affidavit also claimed that Wages signed an affidavit recanting his statements and testimony regarding Hoffman. In 2008, Wages again recanted his testimony at Hoffman's new sentencing hearing.

In dismissing Hoffman's successive petition, the district court found that Hoffman's petition was not timely filed. The court found that Hoffman first knew of Wages' recantation in 2000. Therefore, Hoffman should have brought the issue before the court in his 2001 or 2002 post-conviction petitions. Since he did not raise the issue in those petitions, the district court concluded that Hoffman's attempt to raise the claim in his 2010 petition was not timely.[2]

---

[1]    Hoffman's successive petition raised several other claims that were summarily dismissed by the district court. Hoffman does not challenge the dismissal of those claims in this appeal.

[2]    The State requests that this Court modify the "reasonable time" standard for filing successive post-conviction petitions in noncapital cases and adopt the forty-two-day standard established by the Idaho Supreme Court for filing successive petitions in capital cases. The

Hoffman contends that he filed his successive post-conviction petition within a reasonable time because he was prevented from filing earlier due to ineffective assistance from his prior post-conviction counsel. Hoffman also contends that he thought his claim of actual innocence would be addressed by the Ninth Circuit Court of Appeals or at his new sentencing hearing. Further, Hoffman contends that he filed his petition claiming actual innocence "as soon as he could have given his mental retardation and limited abilities."

The record demonstrates that Hoffman had notice of Wages' recantation in 2000. Timeliness is measured "from the date of notice, not from the date a petitioner assembles a complete cache of evidence." *Charboneau*, 144 Idaho at 905, 174 P.3d at 875. Therefore, Hoffman could have filed a successive petition claiming actual innocence as early as 2000. Further, Hoffman allegedly asked his prior post-conviction counsel to raise the claim of actual innocence in his 2001 and 2002 petitions, but his counsel allegedly refused. Ineffective assistance of counsel claims are presumed to be known when they occur. *State v. Rhoades*, 120 Idaho 795, 807, 820 P.2d 665, 677 (1991). Therefore, Hoffman *knew, or should have known,*

---

"reasonable time" standard applicable in noncapital cases was established by the Idaho Supreme Court in *Charboneau v. State*, 144 Idaho 900, 174 P.3d 870 (2007):

> [W]e agree with the district court that there should be a reasonable time within which such claims are asserted in a successive post-conviction petition, once those claims are known. The trial court's analysis of "sufficient reason" permitting the filing of a successive petition must necessarily include an analysis of whether the claims being made were asserted within a reasonable period of time. In determining what a reasonable time is for filing a successive petition, we will simply consider it on a case-by-case basis, as has been done in capital cases."

*Id.* at 905, 174 P.3d at 875. Following *Charboneau*, the Idaho Supreme Court clarified the "reasonable time" standard as it relates to capital cases. In *Pizzuto v. State*, 146 Idaho 720, 202 P.3d 642 (2008), the Idaho Supreme Court held "that a reasonable time for filing a successive petition for post-conviction relief is forty-two days after the petitioner knew or reasonably should have known of the claim, unless the petitioner shows that there were extraordinary circumstances that prevented him or her from filing the claim within that time period." *Id.* at 727, 202 P.3d at 649. The State argues that the "reasonable time" standard in noncapital cases was modeled after the "reasonable time" standard in capital cases; therefore, the standard in noncapital cases should be modified to reflect the forty-two-day standard that was subsequently established in capital cases. However, these standards were established by the Idaho Supreme Court; accordingly, we have no authority to overrule Idaho Supreme Court precedent.

about the alleged ineffective assistance of his post-conviction counsel immediately following his 2001 and 2002 post-conviction petitions. The Idaho Supreme Court dismissed Hoffman's 2002 post-conviction petition in 2005. *See Hoffman v. State*, 142 Idaho 27, 121 P.3d 958 (2005). Therefore, even if we assume that Hoffman was not aware of his ineffective assistance of post-conviction counsel claim until after the Idaho Supreme Court's decision, Hoffman could have filed a successive petition in 2005. However, Hoffman failed to file a successive post-conviction petition raising his actual innocence until 2010. Even in 2008, after Wages recanted his testimony at Hoffman's new sentencing hearing, Hoffman failed to file a post-conviction petition asserting actual innocence. Instead, he waited two years to assert the claim.

Hoffman's mental limitations do not provide reason to wait ten years to file a successive petition. Hoffman's pro se petition for post-conviction relief demonstrates that he had the knowledge and ability to file a successive petition. Further, Hoffman's request to prior post-conviction counsel that a claim of actual innocence be included in his prior petitions demonstrates that Hoffman had the mental acuity to know that a claim existed and could have been raised at those times. Additionally, Hoffman's assumption that his claim of actual innocence would be addressed in his federal court proceedings or during his resentencing did not entitle him to equitable tolling and did not extend the reasonable time requirement. Therefore, Hoffman has not established sufficient reason for the ten-year delay in filing his successive petition. Thus, we conclude that under the circumstances of this case, Hoffman's successive petition was not brought within a reasonable time.

## III.

## CONCLUSION

The district court did not err by dismissing Hoffman's successive petition for post-conviction relief. Therefore, the order dismissing Hoffman's petition for post-conviction relief is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

9