**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39842**

| | | |
|---|---|---|
| **IRWIN RYAN RAY ADAMS,** | ) | **2013 Unpublished Opinion No. 790** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed:  December 12, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County.  Hon. John K. Butler, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Irwin Ryan Ray Adams appeals from the district court's judgment summarily dismissing Adams' petition for post-conviction relief.  Adams asserts he was entitled to an evidentiary hearing, having established a genuine issue of material fact exists as to whether defense counsel provided ineffective assistance of counsel by failing to present expert witness testimony and by failing to investigate evidence.  For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

This post-conviction relief action arises from a jury finding Adams guilty of felony vehicular manslaughter with gross negligence.  Adams was driving with a passenger, his friend, when Adams crashed his car.  The car crash resulted in severe injury to the friend, and the friend eventually died as a result of his injuries.  Although Adams contended his car was being chased at the time of the crash, others asserted that Adams was chasing another car.  The State alleged

1

via an information that Adams drove with gross negligence "by driving his motor vehicle at a high rate of speed, to-wit: 108 miles per hour in a 50 miles per hour zone trying to chase down another vehicle and crashing his motor vehicle which caused the death of the victim: [the friend]."

In the underlying case, Adams was represented by two attorneys. Adams' first defense counsel represented Adams before trial and contacted and retained the services of an accident reconstruction expert. Defense counsel provided the expert with photographs of the roadway where the accident occurred, interviews of four of Adams' family members, and an accident reconstruction report from the Idaho State Police. Approximately a month after obtaining the information, the expert contacted defense counsel and advised him of the expert's preliminary results: the expert concluded the car driven by Adams was traveling between 70 to 75 miles per hour (mph) at the time of the crash. The expert also requested additional photographs from the accident. In response, defense counsel advised the expert to finish the report and agreed to provide the photographs. According to the expert, this is the last contact the expert had with Adams' first defense counsel, and the expert had no communication with Adams' second defense counsel.

According to Adams' second defense counsel, she took over the case after she and Adams' first defense counsel decided to dissolve their legal partnership. At a continuance hearing, defense counsel indicated that the defense was awaiting results from the expert. The judge continued the trial to another date. At the status conference, a stipulation of continuance was presented to the court and the judge, again, reset the trial date. Later, the prosecutor filed a motion to compel because the prosecutor had not been provided the defense expert's report. Defense counsel informed the court at the hearing on the motion that she had spoken to the expert by phone and, based on what she had learned from the expert, she did not intend to use the expert's report at trial. The court asked if the defense's position was not to call the expert at trial, and defense counsel confirmed that she did not intend to call the expert. In fact, defense counsel did not offer the expert's testimony at trial.

Prior to trial, Adams claims he informed defense counsel that his car had mechanical issues and, according to Adams, defense counsel indicated it was unnecessary to rely on evidence of the engine's mechanical condition for Adams' defense. After Adams' vehicle was removed from the crash scene by a towing company, Adams' father acquired possession of the

2

vehicle and eventually sold it to a car business. The car business owner removed the engine from the vehicle and then crushed the car body. Adams' father reacquired possession of the engine following the conclusion of the trial and had the engine diagnosed by an automobile mechanic. The automobile mechanic provided an affidavit attesting to his finding of mechanical issues with the engine. The mechanic concluded, "That while it is within the realm of possibility that the motor I disassembled and observed could have still produced speeds of up to one hundred eight (108) miles per hour, in my opinion it is highly unlikely due to its mechanical condition."

While Adams' direct appeal was pending, Adams filed the instant petition for post-conviction relief asserting seven grounds for relief that focused on three areas, two of which are at issue on appeal: (1) defense counsel's failure to present expert witness testimony from the accident reconstruction expert, and (2) defense counsel's failure to investigate evidence of the engine's mechanical condition. Attached to the petition were affidavits from the accident reconstruction expert, Adams' father, the owner of the car business, and the automobile mechanic. Subsequently, the district court issued a notice of intent to dismiss. Adams responded with a memorandum opposing the dismissal, a supplemental affidavit of the expert with an attachment, an affidavit of Adams' second defense counsel, and a supplemental affidavit of Adams' father. Thereafter, the district court summarily dismissed the petition. Adams appeals.

## II.

### STANDARD OF REVIEW

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. Idaho Code § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the

3

personal knowledge of the petitioner, and affidavits, records or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924

4

P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts that, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

### III.

### ANALYSIS

Adams argues the district court erred by summarily dismissing his petition for post-conviction relief because there was a genuine issue of material fact as to whether Adams was prejudiced by: (1) defense counsel's failure to present expert witness testimony from the accident reconstruction expert, and (2) defense counsel's failure to investigate evidence of the engine's mechanical condition.

**A.       The Standard for Establishing Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). This Court has long adhered to the proposition that tactical or strategic decisions of defense counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). Determining whether an attorney's pretrial preparation falls below a level of reasonable performance constitutes a question of law, but is essentially premised upon the circumstances surrounding the attorney's investigation. *Thomas v. State*, 145 Idaho 765, 769, 185 P.3d 921, 925 (Ct. App. 2008). To prevail on a claim that counsel's performance was deficient for failing to investigate, a petitioner must establish that the inadequacies complained of would have made a difference in the outcome of trial. *Id.* It is not sufficient merely to allege that counsel may have discovered a weakness in the State's case. *Id.* We will not second-guess defense counsel in the particularities of trial preparation. *Id.*

To show prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 694). This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id.* (citing *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 791 (2011)).

**B.       The Accident Reconstruction Expert**

As noted above, *Strickland* requires a showing of deficient performance and prejudice. The district court determined Adams had offered sufficient evidence raising an issue of material

fact as to whether Adams' defense counsel were deficient for failing to present the accident reconstruction expert's testimony. We assume, without deciding, the district court's conclusion is correct, and we focus on whether Adams adduced evidence leaving a genuine issue of a material fact of whether Adams was prejudiced by defense counsel's failure to present the expert witness testimony. *See Ridgley*, 148 Idaho at 676, 227 P.3d at 930 (addressing only the prejudice prong of *Strickland*).

A post-conviction petition requires admissible evidence supporting its averments. *See Wolf*, 152 Idaho at 67, 266 P.3d at 1172. To substantiate his claim regarding what the expert would have testified to at trial, Adams submitted to the district court both the expert's initial affidavit and the expert's supplemental affidavit, the latter provided after the notice of intent to dismiss. In the expert's initial affidavit, the expert states that Adams' first defense counsel provided the expert with data generated by the Idaho State Police. The expert continues to state he concluded the speed of the vehicle was between 70 and 75 mph. As the district court found, however, the expert did not discuss how he reached his conclusions regarding the speed and upon what data he based the speed. The attachment to the supplemental affidavit provided in part:

> In Mr. Adams' case, the investigating officer utilized a vault/fall airborne equation to calculate the speed of Mr. Adams' vehicle at the time he lost control. A single calculation was utilized with a single data set for input. Because airborne equations involve trigonometric functions, a small error in field data (especially at low launch angles) may produce a large error in the calculated speed results. The investigating officer's report and calculations indicate an angle of 1.8 degrees was used for the take-off angle. *The officer did not note in any of the material provided to me how the take-off angle was measured nor how the vertical fall distance was measured. There was also no indication of how a take-off point was established in order to measure an airborne distance.* In the area of the collision the roadway surface is defined by a large vertical radius roadway change. There was no physical evidence on the roadway of a take-off point and a take-off point would therefore be difficult to determine. The take-off point is critical to the airborne distance, the vertical fall distance and the take-off angle. If the take-off point is in error by only the wheelbase of the vehicle and the take-off angle in error by only 2 degrees, the calculated speed would be just 78 mph.

(Emphasis added.) The expert later stated:

> Without details concerning the exact measurements and procedures utilized by the investigating officers *I cannot say where the error occurred in their airborne calculation*, only that it is my opinion that an error did occur and given the

7

roadway geometry and physical evidence available it is my expert opinion that an airborne evaluation error would be easy to make.

(Emphasis added.)

The district court determined that the expert's opinions were conclusory and speculative.[1] The district court found there was: (1) no dispute that Adams' vehicle, prior to the loss of control, went airborne; (2) no other explanation for the two parallel seven-foot gouge marks on the roadway surface; and (3) no dispute that the State's expert witness used a certain formula to calculate Adams' vehicle's speed at the point where the vehicle went airborne. Moreover, the district court found that Adams' expert made no mention of the State's expert trial testimony regarding her measurements and calculations. The district court then proceeded to layout the techniques testified to by the State's expert at trial. The district court reasoned that an expert who wanted to challenge the State's expert's calculations would have to, at a minimum, return to the accident scene, determine the launch angle, measure the distance from the take-off point to touchdown, and determine the height of the vehicle while airborne.

The record reflects that the expert's opinions are not based on the detailed discussion of the techniques and calculations testified to at trial by the State's expert witness. Rather, the expert's opinions are based upon data originally provided to the expert by Adams' first defense counsel months before the trial occurred. According to the supplemental affidavit, the expert did not take measurements or apply his own procedures. Moreover, the expert was unable to point out where the alleged error existed, other than to say, "only that it is my opinion that an error did occur." "[A]n expert's opinion that is unsubstantiated by facts in the record, or that is

---

[1]   Adams argues the district court weighed the evidence of Adams' speed in favor of the State and criticized Adams' expert's conclusions by applying an incorrect standard. It is apparent from the record that the district court relied on the proper standard for handling disputed facts in its memorandum summarily dismissing the petition for post-conviction relief. Idaho jurisprudence recognizes that a district court *can* draw reasonable inferences from *undisputed* evidentiary facts in the record. *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008); *see Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009) ("When an action will be tried before a court without a jury, the court *may*, in ruling on the motions for summary judgment, *draw probable inferences arising from the undisputed evidentiary facts*." (emphasis added)). Contrary to Adams' assertion that the rule of drawing reasonable inferences from undisputed evidentiary facts "is expressly limited to only those cases where there is no disputed evidence regarding the issue to be determined by the trial court for summary disposition purposes," our jurisprudence has not barred the lower courts from drawing reasonable inferences from undisputed evidentiary facts even when there are disputed evidentiary facts as well.

speculative or conclusory, has little or no probative value and may be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *State v. Schneider*, 129 Idaho 59, 62, 921 P.2d 759, 762 (Ct. App. 1996); *accord Weeks v. Eastern Idaho Health Servs.*, 143 Idaho 834, 838, 153 P.3d 1180, 1184 (2007) ("Expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict and, therefore, is inadmissible as evidence.").

We are persuaded that Adams' proffered evidence does not raise a genuine issue of material fact regarding the resulting prejudice from the failure to present expert testimony because the evidence was conclusory and speculative and therefore would not have been admissible at trial. The evidence in the record establishes that Adams was driving in excess of the posted speed limit. The district court determined:

> Whether the speed of [Adams'] vehicle was 75 mph or 108 mph or somewhere in between, by reason of the speed in the environment, given the roadway conditions; there was a lessening of control of [Adams'] vehicle to the point where such lack of effective control was likely to bring harm to another, i.e. [the friend] as well as [Adams]. In the civil context, a jury finding of gross negligence may be based upon evidence tending to show a series or a combination of negligent acts on the part of the defendant. *Swa* [*v. Farmers Ins. Exchange*, 93 Idaho 275, 277, 460 P.2d 410, 412 (1969)].

Even if the accident reconstruction expert testified that Adams was driving around 75 mph when he crashed, we are not persuaded that there is a reasonable probability of a different jury verdict at trial. As the district court found:

> The fact remains that [Adams] was driving at such a speed to cause his vehicle to go airborne and, when it returned to the roadway surface, [Adams] lost control which resulted in the death of [the friend]. There can be no dispute that [Adams'] operation of his motor vehicle was a significant cause contributing to the death of [the friend] and that the totality of the circumstances was sufficient to establish gross negligence on the part of [Adams].

## C.    Adams' Car Engine

Adams also maintains there was a genuine issue of material fact as to whether Adams was prejudiced by defense counsel's failure to investigate evidence of the mechanical condition of Adams' car engine. Specifically, Adams contends the district court should have conducted an

9

evidentiary hearing to determine when Adams raised the possibility of mechanical issues to defense counsel.

The district court's analysis focuses on the prejudice element. We assume without deciding that defense counsel was deficient by failing to investigate the alleged mechanical issues. Thus, we are left again with the analysis of the prejudice prong of *Strickland*. *See Ridgley*, 148 Idaho at 676, 227 P.3d at 930 (addressing only the prejudice prong of *Strickland*). The district court found that Adams admitted to never discussing the alleged mechanical issues with his first defense counsel and admitted that he had attempted to discuss the issue with only his second defense counsel. Based on the affidavits, the district court found that the father did not attempt to retrieve the engine until approximately four months after Adams' trial resulted in a guilty verdict, that the engine had been out of Adams' possession for about a year, and that there was no showing of when Adams' second defense counsel was informed of any mechanical issues. Even if the court accepted the testimony of the accident reconstruction expert and the mechanic, the district court was left with one conclusion: that Adams drove the vehicle at least 20 to 25 mph over the speed limit. The court then determined that because the evidence as to the mechanical condition of Adams' engine would go to the speed of Adams' vehicle, the same reasons discussed by the district court in its analysis of Adams' accident reconstruction expert would apply, and the speed would not change the jury's verdict and, consequently, not satisfy the prejudice prong of *Strickland*.

We are persuaded that Adams has not raised a genuine issue of material fact as to whether there was a reasonable probability the jury verdict would have changed had defense counsel investigated and presented evidence of the engine's mechanical condition. Even the mechanic's affidavit that Adams presented in support of this claim acknowledged that the affiant could not rule out the possibility that the engine could have produced speeds up to 108 mph. Therefore, his testimony would have done little to rebut the State's case.

### III.

### CONCLUSION

We conclude that Adams has not raised a genuine issue of material fact as to whether Adams was prejudiced by defense counsel's failure to present expert witness testimony. The evidence from Adams' accident reconstruction expert is conclusory and speculative and does not create a reasonable probability that the jury verdict would have changed. We also conclude that

10

Adams has not raised a genuine issue of material fact as to whether Adams was prejudiced by defense counsel's failure to investigate evidence of the engine's mechanical condition. Even if the automobile mechanic had presented his findings regarding the engine's mechanical condition, we are not persuaded that there is a reasonable probability that the jury verdict would have changed. Accordingly, we affirm the district court's judgment summarily dismissing Adams' petition for post-conviction relief.

Judge LANSING and Judge GRATTON **CONCUR.**