# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48741

| | |
|---|---|
| STEPHEN WILLIAM LUNDQUIST, | ) |
| | ) Filed: October 12, 2022 |
| Petitioner-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment summarily dismissing petition for post-conviction relief, affirmed.

Riggins Law, P.A.; Paul E. Riggins, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Stephen William Lundquist appeals from the district court's summary dismissal of his petition for post-conviction relief. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In the underlying criminal case, the State charged Lundquist in 2014 with felony stalking (2014 stalking case). After a jury found him guilty, the district court imposed a five-year sentence with two years determinate, suspended the sentence, and placed Lundquist on probation for five years. While on probation, Lundquist entered into a relationship with GSL, and in 2018, Lundquist pled guilty to stalking her. Following this plea, the court entered a no-contact order (NCO) prohibiting Lundquist's contact with GSL. Several months later, Lundquist's probation officer found GSL at Lundquist's home. As a result, the State charged Lundquist with violating the NCO

1

(the NCO case) and filed a motion for probation violation in Lundquist's 2014 stalking case, alleging he violated the NCO, consumed alcohol, and possessed marijuana.[1]

Before the trial in the NCO case, GSL filed a motion to quash the NCO and submitted a letter in support. During the hearing on that motion, however, GSL withdrew the motion and stated "in open court" that Lundquist had actually drafted the letter and that it contained falsehoods. Following this hearing, Detective Dozier interviewed GSL in March 2019 about the false statement Lundquist had prepared.[2] Thereafter, GSL testified at the trial in the NCO case, and the jury found Lundquist guilty of violating the NCO.

After Lundquist was convicted in the NCO case, the district court held a hearing in April 2019 on the State's motion for probation violation in the 2014 stalking case. At the beginning of the hearing, Lundquist's counsel stated that "there was a plea agreement as to the probation violation admission"; "Lundquist will admit allegation No. 1 of the motion for probation violation," which alleged Lundquist violated the law by violating the NCO; and the State "would dismiss the remaining allegations."

Following these statements, the district court asked whether Lundquist wanted to admit that he willfully violated the conditions of his probation, and Lundquist responded, "Yes, Your Honor." The court then asked whether Lundquist admitted to violating the law by violating the NCO, and again Lundquist responded, "Yes, Your Honor." Based on Lundquist's admission, the court revoked his probation and executed the sentence in the 2014 stalking case without having an evidentiary hearing on the alleged probation violations.

A few months later, on June 12, 2019, Detective Dozier met with Lundquist to question him about the letter he purportedly falsified in support of GSL's motion to quash the NCO. Subsequently, in October 2019, Lundquist learned during discovery in a separate criminal case about a police report Detective Dozier prepared (the Dozier report) regarding Lundquist's alleged

---

[1] This motion was the State's third motion for probation violations in the 2014 stalking case. After the district court initially placed Lundquist on probation, it found he violated the terms of his probation, revoked probation, retained jurisdiction, and eventually returned Lundquist to probation. Later, Lundquist admitted to violating his probation a second time, but the court did not revoke his probation.

[2] Sometime after this interview, the State charged Lundquist with preparing false evidence and intimidating a witness.

falsification of evidence in the NCO case.[3]  The Dozier report summarized in writing Detective Dozier's interview with GSL in March 2019 and his subsequent interview with Lundquist on June 12.  The Dozier report is dated "6/12/2019."

In June 2020, Lundquist filed a petition for post-conviction relief in this case, challenging the district court's revocation of his probation in the 2014 stalking case.  In his petition, Lundquist alleges that:

> The State never revealed the audio recording of the interview [of GSL by Detective Dozier], the existence of the [Dozier report], the contents of the report, the fact that the interview occurred, the knowledge possessed by law enforcement agents of the [S]tate, or any summary of the interview, to the defense prior to [the] jury trial [in the NCO case].

Further, Lundquist alleges "the interview revealed [GSL] was not honest under oath" at the trial in the NCO case and "contained substantial specific and general impeachment information which the defense could have utilized to impeach [GSL]."  As a result, Lundquist alleged that the State engaged in prosecutorial misconduct in the NCO case and that he had filed a petition for post-conviction relief in that case, seeking to have his conviction for violating the NCO vacated. Finally, Lundquist alleged if he "obtains the vacation of his conviction in [the NCO case], there would be no criminal law violation upon which his probation could be revoked [in the 2014 stalking case]."  Relying on Idaho Code § 19-4901(a)(4), Lundquist requests in his petition in this case that "his probation violation conviction" in the 2014 stalking case be vacated.

The State filed a motion for summary dismissal of Lundquist's post-conviction petition. After a hearing on the motion, the district court entered a written decision granting the motion.  It ruled that Lundquist failed to plead a claim for relief under I.C. § 19-4901(4) because "he simply wants to be returned to probation" in the 2014 stalking case.  The court construed Lundquist's claim as seeking relief under I.C. § 19-4901(5) and concluded Lundquist failed to make "a cogent argument that violation of his constitutional right in [the NCO case] can somehow result in a successful collateral attack on a completely different proceeding" in the 2014 stalking case.

Nevertheless, the district court "discern[ed]" that "Lundquist is claiming his probation was unlawfully revoked because the State failed to disclose the contents of the tape recording [of Dozier's interview with GSL] prior to his entering an admission [to a probation violation] in the

---

[3]    Lundquist learned about the Dozier report in the discovery of the case charging him with preparing false evidence and intimidating a witness.

[2014] stalking case." Considering this issue, the court concluded it "is not persuaded that the State has an obligation to produce *Brady*[4] material in a probation revocation proceeding." Regardless, the court concluded that, even if the State had such an obligation, the State's failure to produce *Brady* material did not prejudice Lundquist because "a reasonable person in [his] position would not have insisted on the probation evidentiary hearing even if the interview had been disclosed to him." In reaching this conclusion, the court found that "Lundquist has not provided [the] court with [the Dozier report] nor the audio recording" of Dozier's interview with GSL in March 2019.

Lundquist timely appeals the summary dismissal of his petition for post-conviction relief.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free

5

review.  *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

Lundquist argues the district court erred by "converting" his claim under I.C. § 19-4901(a)(4)[5] to a claim under I.C. § 19-4901(a)(5).[6]  In doing so, the court construed Lundquist's claim as asserting a *Brady* violation related to the probation revocation proceeding in the 2014 stalking case.  Specifically, the court assumed that the State had an obligation under *Brady* to disclose information to Lundquist about Dozier's March 2019 interview with GSL before the probation revocation proceeding and that "a violation of that duty is cognizable" for post-conviction relief.

Contrary to the district court's assumptions, however, Lundquist's allegations clearly state the *Brady* violation about which Lundquist complains occurred in the NCO case--not in the probation violation proceeding in the 2014 stalking case.  For example, Lundquist alleges in his petition that the State failed to reveal the information about Dozier's interview with GSL before the NCO trial, "engaged in prosecutorial misconduct by not revealing this potentially exculpatory information" before the NCO trial, and deprived Lundquist "of a fair trial by their [sic] non-disclosure of exculpatory evidence to the defense" before the NCO trial.

Similarly, Lundquist's appellate arguments also demonstrate he premises his claim for post-conviction relief in the 2014 stalking case on an alleged *Brady* violation in the NCO case.  For example, Lundquist contends his "theory of relief is simple[:]  If he had the Dozier report prior to the [NCO] violation trial, the outcome of the trial would have been different.  If the trial had been different, [then the State] may not have pursued proceedings to violate his probation in the [2014 stalking] case."  Lundquist argues, "the prosecution was obligated to disclose all impeaching or exculpatory evidence to [him] prior to [the trial] for violating the [NCO]."  Further, he argues

---

[5]     Idaho Code § 19-4901(a)(4) provides for post-conviction relief if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."

[6]     Idaho Code § 19-4901(a)(5) provides for post-conviction relief if the petitioner's "sentence has expired, his probation, or conditional release was unlawfully revoked by the court in which he was convicted [or] he is otherwise unlawfully held in custody or other restraint."

6

"the real inquiry" for the district court should have been "whether, setting aside the conviction for violating the [NCO] due to the [Brady] violation, there would have still been enough in the record to revoke [Lundquist's] probation" in the 2014 stalking case.

Because Lundquist's claim clearly seeks post-conviction relief in the 2014 stalking case for a *Brady* violation that allegedly occurred in the NCO case, we analyze the claim as such and conclude that it fails--regardless of whether it arose under I.C. § 19-4901(a)(4) as Lundquist alleges or under I.C. § 19-4901(a)(5) as the district court analyzed it.[7]  Ordinarily, whether the State committed a *Brady* violation is an issue the court resolves in a post-conviction case seeking relief from a conviction in an underlying case in which the alleged violation occurred or on direct appeal from that conviction.  In Lundquist's petition in this case, he alleges he also filed a post-conviction petition challenging the conviction in the NCO case.  Lundquist, however, fails to provide any proof a court in that case has ruled the State actually committed a *Brady* violation in the NCO case.  Rather, Lundquist simply notes that "case is pending on appeal."[8]  Regardless of whether Lundquist's claim is construed under subsection (a)(4) or (a)(5) of I.C. § 19-4901, Lundquist is not entitled to post-conviction relief for an unproven, assumed *Brady* violation in another case.

Further, Lundquist provides neither a cogent argument nor any supporting authority for the proposition that the district court in this post-conviction case had the authority to resolve whether a *Brady* violation actually occurred in the NCO case, which is not the underlying case giving rise

---

[7]     Although we do not need to resolve the issue for purposes of this appeal, this Court's prior decisions indicate Lundquist could have asserted his claim challenging the probation revocation under either subsection (a)(4) or (a)(5) of I.C. § 19-4901.  In *Knutsen v. State*, 144 Idaho 433, 440, 163 P.3d 222, 229 (Ct. App. 2007), this Court ruled that "for the purposes of I.C. § 19-4901(a)(4), the sentencing process includes the probation revocation proceedings."  Similarly, in *Lake v. State*, 126 Idaho 333, 336, 882 P.2d 988, 991 (Ct. App. 1994), this Court ruled that under I.C. § 19-4901(a)(5), "post-conviction relief proceedings are available to address a convicted defendant's claim that his probation was unlawfully revoked by the court in which he was convicted."

[8]     Lundquist's appeal of the denial of his petition for post-conviction relief from his conviction in the NCO case is Docket No. 49532.  In that case, Lundquist is appealing the district court's decision on intermediate appeal affirming the magistrate court's order denying post-conviction relief.  Following an evidentiary hearing in that case, the magistrate court ruled Lundquist had failed to establish a *Brady* violation.  Lundquist has not yet filed an opening brief in Docket No. 49532.

to the probation revocation Lundquist challenges here. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Regardless, even assuming the district court has such authority, Lundquist failed to present admissible evidence in this case to establish as genuine issue of material fact that the State committed a *Brady* violation in the NCO case.

Establishing a *Brady* violation requires a three-part showing: (1) the evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) the State must have suppressed that evidence, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). As Lundquist acknowledges, "to establish prejudice, [he] must show the omitted evidence was material, meaning there was a reasonable probability of a different result at [the NCO] trial had the [S]tate turned over the Dozier report and the contents of the interview." *See Baker v. State*, 169 Idaho 284, 304, 494 P.3d 1256, 1276 (Ct. App. 2021) (discussing proof of prejudice element sometimes also referred to as materiality).

Lundquist, however, did not submit admissible evidence in this case to create a material, factual issue of a reasonable probability of a different result at the NCO trial if the State had produced in the NCO case the information regarding Detective Dozier's interview with GSL. Although Lundquist submitted the Dozier report[9] and a transcript of GSL's testimony at the trial in the NCO case in support of his petition in this case, this evidence is inadequate to establish a material factual issue that the State committed a *Brady* violation in the NCO case for several reasons. For example, Lundquist did not submit in this case any of the trial evidence in the NCO case--other than GSL's testimony. Without the remaining evidence, determining whether there was a reasonable probability of a different result in the NCO case is not possible. Further, Lundquist failed to establish that the June 2019 Dozier report (which is dated months after the

---

[9] Lundquist argues the district court erred by concluding he failed to submit the Dozier report in support of his petition for post-conviction relief. For example, the court concluded, "Lundquist has not provided this court with Detective Dozier's report nor the audio recording of his interview with [GSL]. Therefore, the court can make no findings about what she may have told Detective Dozier." The appellate record shows, however, that Lundquist did submit the Dozier report with his affidavit in support of his petition in this case. Additionally, the Dozier report appears elsewhere in the record. The court's failure to review the Dozier report, however, does not affect our conclusion that Lundquist's claim for post-conviction relief fails, including because Lundquist has not shown a material factual issue despite submitting the Dozier report in support of his petition.

March 2019 trial in the NCO case) actually existed at the time of the NCO trial and, if not, what information regarding Dozier's interview of GSL did exist for the State to produce under *Brady*. Without this information, it is not possible to determine the evidentiary value to Lundquist of what information the State actually possessed at the time of the trial in the NCO case but did not produce.

Finally, even assuming Lundquist had proven the State actually committed a *Brady* violation in the NCO case, that violation does not create a material factual issue that Lundquist's probation revocation was unjust or unlawful and must be vacated, as Lundquist's post-conviction petition requests. Lundquist argues "the law is clear that a probation revocation in one case that is derived from a conviction in a separate legal proceeding that is later set aside must be remedied." In support, he cites *State v. Blake*, 133 Idaho 237, 985 P.2d 117 (1999), and *State v. Day*, 154 Idaho 649, 301 P.3d 655 (Ct. App. 2013). In both of these cases, the defendant challenged an order revoking probation after the appellate court reversed the conviction forming the basis of the probation revocation, and in both cases, the appellate court remanded for a redetermination of the defendant's probationary status. *Blake*, 133 Idaho at 243, 985 P.2d at 123; *Day*, 154 Idaho at 651, 301 P.3d at 657. As the Court stated in *Day*, however:

> That [a defendant's] underlying conviction was vacated does not mean the district court cannot still revoke probation upon reconsideration of the issue. There is no requirement that a judgment of conviction be a prerequisite to finding a probation violation when the alleged violation is the commission of a crime. A probation violation, unlike a criminal conviction, need not be proven beyond a reasonable doubt.

*Day*, 154 Idaho at 651 n.1, 301 P.3d at 657 n.1 (citation omitted).

Indeed, the Idaho Supreme Court in *State v. Herren*, 157 Idaho 722, 339 P.3d 1126 (2014), declined to vacate a probation revocation after holding substantial evidence did not support the conviction on which the trial court based the revocation. In that case, the State charged Herren with violating a NCO. *Id.* at 724, 339 P.3d at 1128. After a jury found Herren guilty, he admitted to violating his probation. *Id.* On appeal, Herren challenged both the conviction for violating the NCO and the revocation of his probation based on that conviction. The Court held that substantial evidence did not support the conviction for the NCO violation. *Id.* at 725-26, 339 P.3d at 1129-30. The Court, however, declined to vacate Herren's probation revocation because Herren had admitted to violating his probation. *Id.* at 726, 339 P.3d at 1130. It ruled that "a defendant's admission to having violated the terms and conditions of probation constitutes substantial evidence

upon which a trial court may rely in finding the existence of a probation violation." *Id.* at 727, 339 P.3d at 727.

Similar to *Herren*, Lundquist admitted to violating his probation by violating the law. Although Lundquist repeatedly asserts he admitted only to being *convicted* of violating the NCO, a review of the record shows he admitted to violating the law by committing the crime of violating the NCO. For example, during the probation revocation hearing the following exchange occurred:

> THE COURT: So are you willing to admit that you violated the law by committing the crime of violation of a no contact order on December 31st?
>
> [LUNDQUIST]: Yes, Your Honor.

We also reject Lundquist's assertion that he did not admit this violation was "willful," as required by Idaho Criminal Rule 33(f). At the hearing, the district court expressly inquired whether Lundquist's violation was "willful":

> THE COURT: My question here is whether you're willing to admit that you were on probation and that you willfully violated the law?
>
> [LUNDQUIST]: Yes, Your Honor.

Lundquist's admission to willfully violating the NCO is an additional reason to conclude he failed to establish a genuine issue of material fact that his probation revocation was unjust or unlawful.[10]

## IV.

## CONCLUSION

The district court did not err in summarily dismissing Lundquist's petition for post-conviction relief. Accordingly, we affirm the judgment.

Judge GRATTON and Judge HUSKEY **CONCUR**.

---

[10] On appeal, Lundquist argues that "an admission entered in ignorance of [the facts disclosed in the Dozier report] may not be knowing and intelligent though it is otherwise voluntary." Lundquist, however, did not assert before the district court that his admission was not knowing and intelligent. *See State v. Wilson*, 169 Idaho 342, 347, 495 P.3d 1030, 1035 (2021) (providing preservation of issue requires "both the issue and a party's position on that issue must be presented to the trial court").