190 P.3d 920

**Billy G. SHEAHAN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 34180.**

Court of Appeals of Idaho.

June 13, 2008.

Review Denied Aug. 11, 2008.

---

Greg S. Silvey, Kuna, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Billy G. Sheahan appeals from the summary dismissal of his petition for post-conviction relief by which he sought a new trial following his conviction of first degree murder. He asserts that he has presented a meritorious claim that he received ineffective assistance of counsel because his attorneys in the criminal proceedings did not object to an erroneous jury instruction defining an element of the charged offense and did not raise this trial error as an issue in Sheahan's appeal from the conviction.

# I

## BACKGROUND

The facts giving rise to the charge against Sheahan are set forth in the Idaho Supreme Court's opinion on Sheahan's appeal from his conviction, *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003):

Sheahan was arrested for misdemeanor offenses in Shoshone and Kootenai Counties. Fernquist, as co-owner of Access Bail Bonds, posted bail for Sheahan in the aggregate amount of $2800 for Sheahan's release. Sheahan thereafter failed to appear at a pretrial conference for the offenses. The district court issued two bench warrants for Sheahan's apprehension. Under the terms of Idaho's bail statutes, Fernquist was required to have Sheahan appear before the district court within ninety days after Sheahan's missed appearance or risk permanent forfeiture of the posted bail amount.

Fernquist contacted a recovery agent to try to apprehend Sheahan. Fernquist also stopped at Sheahan's residence in Pinehurst, Idaho several times searching for Sheahan and left business cards with Sheahan's neighbor. Prior to his attempts to apprehend Sheahan, Fernquist had never attempted to apprehend a bail jumper.

Approximately ten days before the bond's permanent forfeiture, Fernquist made an early morning trip to Sheahan's residence. On this visit, Sheahan shot and killed Fernquist inside the residence. After the shooting, Sheahan eventually went to a friend's house, called 911 and told the dispatcher that he had shot someone who was breaking into his house.

The details of Fernquist's death were disputed at trial. The state's theory of the case was that Sheahan knew that someone would be looking for him because he had failed to appear in court. As Sheahan saw Fernquist coming to apprehend him, Sheahan decided to kill Fernquist. A piece of pipe which was broken off from other pipe located in Sheahan's garage was found near Fernquist's body. However, it had no fingerprints. Thus, the state suggested that Sheahan placed the pipe near Fernquist to bolster his justifiable homicide claim. Additionally, the state presented evidence that in an incident about five weeks before the shooting, Sheahan had pointed a gun where an officer stood at the threshold of his residence.

Sheahan's theory of the case was that the shooting was justifiable. He stressed that Fernquist was not wearing official clothing that would identify him as an authority figure coming to apprehend Sheahan. Nor did neighbors hear Fernquist announce his presence at the residence. Also, the window in the front door had been broken from the outside. Fernquist had small slivers of glass on his body while Sheahan had none. Thus, Sheahan argued that Fernquist broke into his residence with a weapon, startled him and that he shot a single gunshot to stop what he believed to be an intruder.

*Id.* at 272, 77 P.3d at 961. A jury found Sheahan guilty of first degree murder, and he received a unified life sentence, with a twenty-year fixed term. Sheahan's conviction was affirmed by the Idaho Supreme Court. *Id.*

Sheahan then filed this action for post-conviction relief alleging numerous claims of ineffective assistance of counsel, including the only one presented on appeal-that his trial counsel's failure to object to an erroneous instruction on malice aforethought, and his appellate counsel's failure to raise this error in the instructions as an issue on appeal, constituted ineffective assistance. A motion by the State for summary dismissal of Sheahan's petition was granted by the district court. Sheahan now appeals that order.

# II

## ANALYSIS

An action for post-conviction relief is civil in nature and is governed by the Idaho Rules of Civil Procedure. *Pizzuto v. State*, 127 Idaho 469, 470, 903 P.2d 58, 59 (1995); *Mata v. State*, 124 Idaho 588, 591, 861 P.2d 1253, 1256 (Ct.App.1993). Such an action may be summarily dismissed, either on the State's motion or upon the court's own initiative, if the applicant's evidence has

raised no genuine issue of material fact which, if resolved in the applicant's favor, would entitle him to the requested relief. Idaho Code § 19–4906; *Medrano v. State,* 127 Idaho 639, 642, 903 P.2d 1336, 1339 (Ct. App.1995); *Gonzales v. State,* 120 Idaho 759, 761, 819 P.2d 1159, 1161 (Ct.App.1991). Therefore, on appeal from the summary dismissal of an application for post-conviction relief, the inquiry is whether the application, affidavits, or other evidence supporting the application allege facts which, if true, would entitle the applicant to relief. *Parrott v. State,* 117 Idaho 272, 274, 787 P.2d 258, 260 (1990); *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994); *Whitehawk v. State,* 116 Idaho 831, 833, 780 P.2d 153, 155 (Ct.App.1989).

The standard for evaluating a claim of ineffective assistance of counsel is established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), where it is stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. The Court set forth the two standards that a defendant must satisfy to prevail on such a claim:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland,* 466 U.S. at 687[ 104 S.Ct. at 2064, 80 L.Ed.2d at 693].

 Sheahan met his burden on the first prong of the *Strickland* test, for he has shown that his trial attorney was deficient in not objecting to the jury instruction that defined "malice," which is an element of first degree murder. As relevant to the charge against Sheahan, Idaho Code § 18–4001 defines murder as "the unlawful killing of a human being ... with malice aforethought...." "Malice," as used in the murder statute, is in turn defined in I.C. § 18–4002:

Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

In Sheahan's case, an instruction was given to the jury that adequately defined murder and malice in the first paragraph,[1] but then added to the definition of malice in a plainly erroneous second paragraph:

Murder is the killing of a human being without legal justification or excuse and with malice aforethought. Such malice may be express or implied. It is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow human being. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought. The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.

The word "aforethought" does not imply deliberation or the lapse of time. It only means that the malice must precede rather than follow the act.

*See also State v. Porter,* 142 Idaho 371, 374–75, 128 P.3d 908, 911–12 (2005). This pattern jury instruction had not been approved at the time of Sheahan's trial.

---

1. The recommended definition of malice for use in murder trials that is now found in Idaho Criminal Jury Instruction 703 is as follows:

Malice may be express or implied.

Malice is express when there is manifested a deliberate intention unlawfully to kill a human being.

Malice is implied when:

1. The killing resulted from an intentional act,

2. The natural consequences of the act are dangerous to human life, and

3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

Malice as used in these instructions does not require any ill will or hatred toward the person killed, *but only the desire to annoy or injure another or the intent to do a wrongful act.*

(Emphasis added).

The language in the second paragraph apparently was drawn from I.C. § 18–101, which defines various terms used in the criminal code, including "malice." It states:

The following words have in this code the signification attached to them in this section, *unless otherwise apparent from the context:*

 . . . .

4. The words "malice," and "maliciously," import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.

(Emphasis added.) As the italicized language specifies, the section 18–101 definitions are not to be used if a different meaning of the term is "otherwise apparent from context." Because I.C. § 18–4002 provides a different definition of "malice" as that word is used in the murder statutes, the I.C. § 18–101(4) definition is inapplicable. This was confirmed by the Idaho Supreme Court long before Sheahan's trial in *State v. Dillon*, 93 Idaho 698, 713, 471 P.2d 553, 568 (1970). The Court there held that the section 18–101 definition of malice is not to be used in the instructions in a murder case. The Court said that malice aforethought as used in the homicide statutes "imports something more than a 'wish to vex, annoy, or injure another person.'" *Id.*

In Sheahan's case, the incorrect expansion of the definition of malice in the jury instruction's second paragraph improperly lowered the State's burden of proof on that element of the offense. Therefore, Sheahan has shown that the performance of his attorney, who made no objection to the faulty instruction, was not "within the range of competence demanded of attorneys in criminal cases." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2065, 80 L.Ed.2d at 693.

 Demonstration of a deficiency in counsel's performance does not entitle Sheahan to post-conviction relief, however, unless he can also show that he suffered prejudice as a result. To establish prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. *See also Milburn v. State,* 130 Idaho 649, 659, 946 P.2d 71, 81 (Ct.App.1997). Sheahan's claim fails on this prong of the *Strickland* test because the jury's finding that the murder was premeditated eliminates any possibility that the jury relied upon the incorrect portion of the malice instruction.

Sheahan was charged with first degree murder under I.C. § 18–4003(a) on an allegation that the murder was perpetrated by a "willful, deliberate and premeditated killing." Therefore, after being instructed on the elements of murder, the jury was instructed that if they found murder had been proved, they had to decide whether Sheahan was guilty of murder in the first degree. To find guilt of first degree murder, they were told, they had to find that the murder was "a willful, deliberate and premeditated killing." An instruction was given that defined premeditation and guided the jury as follows:

Premeditation means to consider beforehand whether to kill or not to kill, and then decide to kill. There does not have to be any appreciable period of time during which the decision to kill was considered, as long as it was reflected upon before the decision was made. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not premeditation.

If you unanimously agree that the state has proven the above special circumstance of premeditation beyond a reasonable doubt, then you must find the defendant guilty of First Degree Murder. If you unanimously agree that the special circumstance of premeditation has not been proven beyond a reasonable doubt, but have found the defendant guilty of murder, you must find the defendant guilty of Second Degree Murder.

Being so instructed, the jury found Sheahan guilty of first degree murder. Because, the jury found that he premeditated the murder, forming the intent to kill in advance of committing the act, the guilty verdict could not have been affected by the erroneous instruction indicating that the malice element could be satisfied by a mere "desire to annoy or injure another or the intent to do a wrongful act."

■ Where essential elements of a post-conviction claim are conclusively disproven by the record in the criminal proceedings, summary dismissal is appropriate. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Cooper v. State*, 96 Idaho 542, 545, 531 P.2d 1187, 1190 (1975). In this case, the record from the criminal trial proves that there is no prospect that the outcome of the trial would have been different had counsel objected to the erroneous instruction. Therefore, Sheahan has not shown that he can satisfy the prejudice prong of the *Strickland* test.

■ Sheahan's claim for ineffective assistance of his appellate attorney similarly fails for lack of evidence of prejudice. We need not determine whether the attorney was deficient in not raising on appeal a claim of fundamental error in the faulty jury instruction to which trial counsel had not objected,[2] for if an appellate court had addressed the issue, it would necessarily have found the error harmless. A flawed jury instruction requires reversal of a conviction only if it may have misled the jury or prejudiced the defendant. *State v. Page*, 135 Idaho 214, 221, 16 P.3d 890, 897 (2000); *State v. Hanson*, 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997). Here, the jury's determination that Sheahan's killing of Fernquist was premeditated negated any possibility of prejudice from the incorrect malice instruction.

The district court correctly determined that Sheahan had not made a prima facie showing of a right to post-conviction relief.

Therefore, the order of summary dismissal is affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.

---

2. The Idaho Supreme Court recently held that a claim of error in the elements instruction in a criminal case may be raised as fundamental error on appeal, *State v. Anderson*, 144 Idaho 743, 748–49, 170 P.3d 886, 891–92 (2007), but this Court has held that failure to raise an issue of fundamental error for a matter that occurred without objection in the trial court will not be deemed ineffective assistance of the appellate attorney. *Mintun v. State*, 144 Idaho 656, 661–62, 168 P.3d 40, 45–46 (Ct.App.2007). Whether the *Anderson* decision limits or alters the *Mintun* decision is not a question that needs to be addressed here.