**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50275**

| | |
|---|---|
| MICHAEL SHAWN SOUTH, )<br><br>Petitioner-Appellant, )<br><br>v. )<br><br>STATE OF IDAHO, )<br><br>Respondent. ) | **Filed: November 27, 2024**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barbara Duggan, District Judge.

Judgment and order summarily dismissing amended petition for post-conviction relief, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Michael Shawn South appeals from the district court's judgment and order summarily dismissing his amended petition for post-conviction relief. South argues the district court erred by summarily dismissing his petition on grounds for which no notice was given. He also argues his petition raised a genuine issue of material fact as to his claim of ineffective assistance of counsel and the district court employed an erroneously high standard in dismissing South's petition. South was provided with notice of the grounds upon which the district court dismissed his petition. South failed to allege a genuine issue of material fact for his claim of ineffective assistance of counsel, and the district court did not employ an erroneously high standard in dismissing his petition. The judgment and order summarily dismissing South's amended petition for post-conviction relief are affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court summarized the underlying criminal case as follows:

In March 2019, South was arrested after entering a residence and threatening the victim. The State eventually charged South with aggravated assault, battery, and malicious injury to property. South pled not guilty, and the case proceeded to trial. At trial, the evidence showed the victim and South had been in a romantic relationship and were living in Montana. The victim decided to leave South, however, and called a friend, R.O., to pick up the victim in Montana. She then stayed with R.O. and his wife at their home in rural Kootenai County.

On March 8, the victim and South communicated and arranged for South to pick her up at the end of the road leading to R.O.'s home. South did not pick her up as planned, however. Sometime later that night or early the next morning, the victim and R.O. were sitting at the dining room table talking when South walked into the room after entering R.O.'s home, without permission, through an unlocked door. R.O. testified South's presence "startled" him; similarly, the victim testified South "surprised" her.

South demanded that the victim leave with him. When the victim refused to leave, she and South went to her bedroom to talk. According to the victim's testimony, she detected the smell of alcohol on South and during the conversation he became loud and angry. He backhanded the victim in the mouth, splitting her bottom lip. He also pulled a knife out of a sheath tucked into his waistband; pointed it at the victim's neck; and said, "I killed seventeen people. Why the f--- should I let you live?" The victim testified, "I was afraid he was going to kill me."

Upon hearing loud voices and after South had re-sheathed his knife, R.O. entered the victim's bedroom and told South that he had to leave or R.O. would call the police. R.O. testified that in response South "told me that he would just slice and dice me." Similarly, the victim testified South said to R.O., "I'll slice and dice you, old man." South also pushed the victim backwards and punched holes in both the bedroom door and the closet door.

When R.O. left the victim's bedroom to retrieve his phone from his vehicle, South followed him outside. After retrieving his phone, R.O. returned to the home, locked South out, and called 911. During this time, the victim told South she would leave with him and grabbed her coat, but she did not leave. While R.O. was on the phone with 911, South was locked outside the home banging on the door and shouting loudly, including shouting "murder" repeatedly.

Eventually, the police arrived and located South hiding in R.O.'s snowbound vehicle, which was parked near the home. Although the police did not locate a knife on South that night, several days later R.O. found a knife underneath the vehicle, and the victim identified the knife as the one South had pointed at her.

At trial, the State presented the testimony of the victim, R.O., the officer who found South hiding in the vehicle, R.O.'s friend who lives on R.O.'s property and was with him when he found the knife under the vehicle, and the officer who retrieved the knife from under the vehicle. Additionally, the State admitted a

2

transcript of R.O.'s 911 call and numerous photographs, which included the victim's injury, the holes in the doors, and the knife under the vehicle.

A jury found South guilty on all counts. South appealed his conviction, which was affirmed by this Court in an unpublished opinion. *State v. South*, Docket No. 47907 (Ct. App. May 20, 2021). Subsequently, South filed a pro se petition for post-conviction relief. South was appointed counsel, who filed an amended petition for post-conviction relief and an affidavit of South in support of the amended petition. In the amended petition and affidavit, as relevant to this appeal, South alleged his trial attorney provided ineffective assistance of counsel by failing to call a witness, Linda Payne, during trial. South's affidavit alleged that Payne's testimony could have discredited and impeached the victim's testimony at trial.

The State moved to summarily dismiss the amended petition. First, the State argued that, generally, South's claim of ineffective assistance of counsel was without merit because South failed to present any verifiable information in support of his petition. Put another way, the State alleged that South had failed to provide any evidence to support any of his claims that counsel rendered deficient performance or that South was prejudiced. Second, the State argued that, as relevant to this appeal, the specific allegation that South's trial counsel rendered ineffective assistance of counsel by failing to call Payne as a witness was without merit because there was no evidence that Payne was ready, willing, and able to testify, nor was there any non-hearsay testimony presented from Payne.

South filed a response and affidavit from Payne. Payne's affidavit contained statements regarding South's case. The State filed a reply in support of motion for summary disposition where it moved to strike Payne's affidavit because it was "nothing but conclusory, inadmissible hearsay." In a footnote, the State outlined the statements it did not move to strike as hearsay.

In a memorandum decision, the district court denied the State's motion to strike all the statements in Payne's affidavit as hearsay because, as the State acknowledged, some statements were not hearsay. The district court analyzed the statements in the affidavit and found that some of the statements were not hearsay, some should be stricken for lack of foundation, and some should be stricken because they were hearsay. Further, the district court held that South failed to show the relevance of Payne's testimony to his case. Regarding South's ineffective assistance of counsel claim related to failing to call Payne as a witness, the district court held that South failed to present admissible evidence in support of his claim. Finally, the district court held that Payne's

testimony would not have resulted in a more favorable outcome. The district court denied South's claims and summarily dismissed the amended petition. South timely appealed.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 1008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

On appeal, South argues the district court erred by summarily dismissing his amended petition without providing notice of the bases for summarily dismissing the claim alleging ineffective assistance of counsel for failing to call Payne as a witness. South further argues the grounds on which the district court dismissed the claim were erroneous. Finally, South argues the district court erred in summarily dismissing his claim of ineffective assistance for not calling Payne as a witness because he raised a genuine issue of material fact in his petition, and the district court employed an erroneously high standard in finding South did not allege a genuine issue of material fact regarding prejudice. The State argues the district court did not err in summarily dismissing South's amended petition because South was not entitled to additional notice of the deficiencies of his petition following the State's motion for summary disposition. The State also argues South's claims fail because he failed to present a prima facie case of ineffective assistance of counsel and the district court did not employ an erroneously high standard in dismissing the petition.

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades*, 148 Idaho at 249, 220 P.3d at 1068; *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004).

4

A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when

the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

Because a post-conviction proceeding is governed by the Idaho Rules of Civil Procedure, a motion for summary dismissal must, pursuant to I.R.C.P. 7(b)(1), state the grounds for dismissal with particularity. *DeRushé*, 146 Idaho at 601, 200 P.3d at 1150. Under *Strickland* v. *Washington*, 466 U.S. 668 (1984), an applicant for post-conviction relief must demonstrate: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 669. These prongs are known more precisely as (1) deficient performance and (2) resulting prejudice. *Id*. at 687; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). Reasonable particularity only requires pointing out that there is a lack of evidence showing deficient performance or prejudice. *See DeRushé*, 146 Idaho at 601-02, 200 P.3d at 1150-51. It does not require explaining what further evidence is necessary to substantiate a petitioner's claim. *Id.* at 602, 200 P.3d at 1151. If a petitioner believes the grounds for dismissal alleged by the State in its motion for summary dismissal are insufficient, he or she must object in the court below. *Kelly*, 149 Idaho at 522 n.1, 236 P.3d at 1282 n.1. A petitioner cannot challenge the sufficiency of the State's grounds for dismissal for the first time on appeal. *DeRushé*, 146 Idaho at 602, 200 P.3d at 1151.

South argues the district court dismissed his petition on grounds not asserted by the State. South argues that the State only provided notice that South's claim was unsupported by non-hearsay, admissible evidence. He further argues the district court erred in dismissing the petition based on South's failure to explain the relevance of Payne's testimony and that Payne's testimony was unlikely to withstand a foundation objection. The State argues the district court relied, in part, on grounds asserted by the State in its motion for summary disposition and memorandum in support and, thus, the dismissal was not sua sponte.

6

The Idaho Supreme Court has held that when a district court summarily dismisses a post-conviction petition relying, in part, on the same grounds presented by the State in its motion for summary dismissal, the notice requirement has been met. *See Kelly*, 149 Idaho at 523, 236 P.3d at 1283. In *Kelly*, the petitioner argued the district court erred in dismissing his petition for post-conviction relief because the State's motion for summary dismissal contained no notice of the grounds on which his claims were dismissed, and the district court dismissed several of his claims on grounds entirely different than the grounds argued by the State. The State's motion sought dismissal on all claims on the ground that Kelly had "no evidentiary basis to support his claims." *Id.* at 522, 236 P.3d at 1282. The Supreme Court held that, although the district court considered Kelly's petition under several grounds not raised by the State, the district court's holding that "Kelly's petition for post-conviction relief fails because his affidavits do not contain admissible facts to support his allegations of ineffective assistance of counsel" and its statement that "Kelly had failed to submit admissible facts in support of" his claim, were holdings based, in part, on the grounds argued by the State and, thus, Kelly was not entitled to any additional notice of dismissal. *Id.* at 523-24, 236 P.3d at 1283-84.

In this case, the district court did not dismiss South's petition on different grounds than those asserted by the State and, thus, it was not a sua sponte dismissal that would trigger the twenty-day notice requirement of I.C. § 19-4906(b). The State generally alleged the petition was subject to dismissal because "[t]here is no evidence before the Court to support any claim by [South] that his trial counsel's performance fell below an objective standard of reasonableness or that [South] was prejudiced." Specifically, the State addressed the lack of affidavits or other admissible evidence in support of South's petition. After South filed Payne's affidavit in response to the State's motion for summary dismissal, the State filed a reply, arguing that Payne's affidavit was insufficient to provide the necessary factual foundation for South's claims because much of the affidavit was hearsay and not admissible evidence.

The district court dismissed South's ineffective assistance of counsel claim because South failed to offer admissible evidence in support of his claim for ineffective assistance of counsel. The district court held that South failed to explain the relevance of the statements in Payne's affidavit, some of the statements contained hearsay, and other statements lacked foundation. Because of these deficiencies, the district court concluded that South had not shown that any of Payne's statements would have been admissible. Therefore, the district court's ultimate holding--

7

that South failed to provide admissible evidence in support of his claim--is not different than the State's argument that South failed to present evidence in support of his claim of ineffective assistance of counsel. Consequently, the district court's dismissal was not a sua sponte dismissal for which South was entitled to an additional twenty-days notice.

Next, South argues the district court erred because he sufficiently raised a genuine issue of material fact under *Strickland* regarding the relevance of Payne's statements. Regarding deficient performance, South argues it was objectively unreasonable not to present Payne's testimony at trial because the critical question was whether the jury would believe South's version of events as opposed to the victim's and R.O.'s version of events. The State responds that South failed to sufficiently raise a genuine issue of material fact because the three statements from Payne's affidavit identified by South do not show that Payne's testimony would have impeached the victim's testimony in any material way.

According to South, the victim testified that "in [the] months leading up to the alleged incident, [the victim] was mostly living with Mr. South at Ms. Payne's house." South asserts Payne's affidavit would refute that testimony. However, at trial, the victim did not testify that she lived at Payne's house in the months leading up to the incident. Rather, the victim testified that she lived at a few different locations leading up to the incident in the underlying criminal case. In fact, the victim testified as follows on this point:

> Q. All right. So you were staying sometimes at Linda's, and then you would go to the Olivers' house some nights?
> A: Um-hum, yes.

The victim also testified that during January to March, she stayed some of the time in Montana, some of the time at Payne's, and some of the time at the Olivers' house. The victim never testified that "in the months leading up the alleged incident," she "was mostly living" with Payne. Thus, the Payne affidavit does not refute or undermine the victim's testimony.

The second statement South claims Payne could have testified about was that "[the victim] was not, in fact, welcome at [Ms. Payne's] house because of a prior incident when [the victim] had stolen some of her property." South argues this testimony could have impeached the victim's testimony that she stayed at Payne's residence. South's argument misconstrues the trial testimony and affidavit of Payne. In the affidavit, Payne states:

> When [South] took [the victim] to another friend's house to stay, she came back into my house and stole some sentimental hand-made items. When I learned this, I told [South] [the victim] was not welcome at my house ever, and if she came

8

back I would file burglary and theft charges against her. To my knowledge, [South] never brought her back to my house, though he did recover the most important of the stolen items from [the victim] and returned it to me.

Nothing in Payne's affidavit provides any timeframe for the alleged theft or when Payne told the victim she was no longer welcome at Payne's house. Thus, Payne's statement does not contradict or impeach the victim's testimony that she stayed at Payne's house at some unspecified time before the incident that led to the criminal case against South.

The third statement South claims Payne could have testified about is Payne's statement in her affidavit that she "did not agree to pick up [the victim] or drive [the victim] anywhere." South claims this testimony could have undermined the victim's credibility because: "[The victim] also testified that Ms. Payne was supposed to come pick her up to meet Mr. South on the evening of the alleged incident." South again misconstrues the trial testimony. The victim's testimony was as follows:

> Q: So when you ended your conversation with Michael [South], was this communication just with Michael that day?
> A: Yes.
> Q: Okay. And when you ended your conversation with him, did you--had you made any arrangements for him to come there to the house?
> A: Yes.
> Q: What were those arrangements?
> A: Well, because [the Olivers] didn't want Michael up there, *he said* that Linda [Payne] could come pick me up and take me over to her house so that him and I could visit.

(Emphasis added.)

Thus, at trial, the victim's testimony revealed that *South* informed the victim that Payne would give the victim a ride, but Payne's affidavit does not address South's representations to the victim. As a result, this assertion from the affidavit would not affect the victim's credibility because it did not contradict anything the victim said. Because none of the alleged statements undermine the victim's credibility, it was not deficient performance to fail to call Payne for that purpose.

Regarding prejudice, South argues Payne's statements could have exposed falsehoods in the victim's testimony and, as a result, the jury would have had a more concrete basis to find the victim's testimony incredible. According to South, if the jury found the victim lacked credibility, there is a reasonable probability the jury would not have convicted South. The State responds that South fails to demonstrate prejudice because South does not explain how Payne's potential

9

testimony could impeach the victim, affect her credibility, or undermine the other evidence in the case. Alternatively, the State argues that even if the three averments in Payne's affidavit contradicted or impeached the victim's testimony, they do not have any meaningful connection with South's crimes.

In order to establish a genuine issue of material fact regarding any prejudice from South's trial counsel's failure to call Payne as a witness, South was required to make, by way of admissible evidence, a prima facie showing of actual prejudice. Here, as explained above, Payne's potential testimony did not contradict or impeach the victim. As such, South has failed to establish any reasonable probability the outcome would have been different with Payne's testimony. Moreover, the statements in Payne's affidavit did not provide information regarding the night of the assault other than that South said Payne said she would not give the victim a ride. In light of the other evidence presented, even with the three statements from Payne, there is not a reasonable probability the outcome of the trial would have been different. As a result, South fails to present a genuine issue of material fact regarding prejudice.

Finally, South argues the district court employed an erroneously high standard in its analysis of his claims when it stated that Payne's testimony "would have resulted in an outcome more favorable to [South]." The State responds that although the district court omitted the "reasonable probability" preface to the prejudice standard at the end of its discussion of the claim, the court referenced that standard at the beginning of its discussion and, thus, did not use an incorrect standard to summarily dismiss the claims.

Here, South omits the relevant section of the district court's decision that cited the correct standard for establishing prejudice. In its decision, the district court, citing *Fortin v. State*, 160 Idaho 437, 446, 374 P.3d 600, 609 (Ct. App. 2016), stated, "[t]o establish *Strickland* prejudice from ineffective assistance of counsel in plea negotiations, 'the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the plea process would have been different with competent advice,'" and "[South] has not shown that his counsel's performance was deficient or that he was prejudiced thereby." The district court then cited South's petition, which included South's claim that his trial counsel was ineffective for failing to present Payne as a witness. The district court addressed and rejected each claim. In its rejection of South's claim that his trial counsel was ineffective for failing to present Payne's testimony, the district court held that "[South] has not shown that any of Payne's testimony would have resulted in an

10

outcome more favorable to [South]." Thus, when considered as a whole, the district court articulated and applied the correct standard during its analysis and simply used a shortened reference thereafter. As a result, the district court did not apply an erroneously high standard in dismissing his petition.

## IV.

## CONCLUSION

The district court did not dismiss South's amended petition for post-conviction relief on unnoticed grounds or on grounds different than those alleged by the State. The district court did not err in concluding South failed to allege a genuine issue of material fact. The district court did not employ an erroneously high standard in dismissing South's petition. Therefore, we affirm the district court's judgment and order dismissing South's amended petition for post-conviction relief.

Judge LORELLO and Judge TRIBE **CONCUR**.