**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50922**

| | |
|---|---|
| JESUS MANUEL GARCIA,<br><br>      Petitioner-Appellant,<br><br>v.<br><br>STATE OF IDAHO,<br><br>      Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed: March 19, 2025**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael Reardon, District Judge.

Judgment dismissing amended petition for post-conviction relief, <u>affirmed</u>.

Silvey Law Office Ltd; Greg S. Silvey, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Jesus Manuel Garcia appeals from the district court's judgment summarily dismissing his amended petition for post-conviction relief. Garcia argues that he received ineffective assistance of counsel due to counsel's failure to propose a jury instruction on justifiable homicide, as described in Idaho Criminal Jury Instruction 1514, instead of the self-defense instructions given to the jury. We affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

The State charged Garcia with second degree murder, Idaho Code §§ 18-4001, 18-4002, and 18-4003, aggravated battery, I.C. §§ 18-903(a) and 18-907(b), use of a deadly weapon during the commission of a crime, I.C. § 19-2520, and possession of a controlled substance, I.C. § 37-2732(c). The case went to trial in April 2017, and Garcia was convicted of each count as charged. Garcia appealed to the Idaho Supreme Court and the Court affirmed his conviction. *State v.*

*Garcia*, 166 Idaho 661, 668, 462 P.3d 1125, 1132 (2020). The underlying facts, as summarized by the Idaho Supreme Court, were as follows:

> On Friday, January 13, 2017, Garcia and a group of friends went out for dinner and then to several bars in downtown Boise. Garcia consumed alcohol and ingested methamphetamine throughout the night. He was also observed carrying a knife. During the evening, Garcia was described by witnesses as aggressive and agitated.
>
> Garcia's group ended up at China Blue, a club in downtown Boise. Once inside, one of Garcia's acquaintances, Eric Hernandez, went to the restroom, and testified that he was "shoulder checked" by a man either in the hallway to the men's restroom or at the entrance of the restroom. When Hernandez returned to the group, he told his girlfriend and Garcia about the incident. Garcia then went to the bathroom with Hernandez in tow. On the way, Garcia struck or "elbow checked" a man. Garcia and Hernandez then went into the men's restroom.
>
> According to trial testimony, while Garcia and Hernandez were in the China Blue men's restroom, some kind of confrontation occurred between Garcia and a man by the name of Luis Rosales. Rosales testified at trial that Garcia had given him some kind of "mad look." Rosales exited the bathroom and went to the bar to meet several of his acquaintances, including brothers Misael Ruiz Gomez (Misael) and Daviel Ruiz Gomez (Daviel). When Garcia and Hernandez left the bathroom, Rosales, Misael, and Daviel approached the two men on the dance floor. A scuffle broke out and Rosales threw the first punch. Within a matter of seconds, Garcia stabbed Daviel in the chest and in the abdomen, and stabbed Rosales eight times total in the abdomen, stomach, side, and elbow. Garcia then attempted to flee the club, but he was tackled on the front steps by bouncers.
>
> Daviel collapsed on the edge of the dance floor, and never regained consciousness. Daviel died at the hospital three days later. Rosales, unaware that he had been stabbed, tried to leave the club but collapsed on the club's front steps; he later recovered from his wounds. The knife used in the stabbings was found where Garcia had been seen throwing it away as he fled. After Garcia was detained, police found a small plastic bag of what would later be identified as methamphetamine in his pocket. Garcia was taken into custody and interviewed at the Boise Police Department.

*Id*. at 667-68, 462 P.3d at 1131-32.

Garcia's theory of the case was that he was attacked by Daviel and Rosales, whom he stabbed in self-defense. Accordingly, defense counsel requested that the trial court give jury instructions based on Idaho Criminal Jury Instruction (ICJI) 1517 ("Self-Defense"), ICJI 1518 ("Self-Defense--Reasonable Force"), and ICJI 1519 ("Self-Defense--Duty to Retreat"). After presentation of the evidence by both parties at trial, the court instructed the jury on self-defense, based on ICJI 1517, 1518, and 1519. As it relates to the self-defense instruction at issue, Instruction 31 was given to the jury and was based on ICJI 1517.

2

Garcia later filed a petition for post-conviction relief, asserting several claims of ineffective assistance of counsel. Relevant to this appeal, Garcia claimed trial counsel was ineffective for failing to request a justifiable homicide jury instruction as set forth in ICJI 1514--in accordance with I.C. § 18-4009(1). Garcia claimed that his own trial testimony supported such a jury instruction, insofar as he claimed he only took out his knife and stabbed the victim after he was being attacked. Moreover, Garcia claimed he was prejudiced by the failure of trial counsel to propose the justifiable homicide instruction because the instruction does not require the defendant's response be reasonable. Thus, according to Garcia, had this instruction been given, there is a reasonable probability that he would not have been found guilty of the murder charge.

The district court granted the State's motion for summary dismissal, finding that Garcia failed to make a prima facie showing of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). Specific to the jury instruction claim, the court stated that counsel had "developed their strategy and presented their theory on self-defense based on the facts and circumstances pertaining to [Garcia's] charges." Further, the court found that counsel proposed the instructions given at trial based on "what they felt would aid [Garcia] in his defense at the time and nothing in the record would indicate that their representation or decisions fell below an objective standard of reasonableness." The district court held that no reasonable view of the evidence would have supported giving a justifiable homicide instruction. Further, the court held that even if the instruction based on ICJI 1514 was requested, given Garcia's "wildly inconsistent testimony" of how the crimes occurred, Garcia could not establish that had such an instruction been requested it would have been given, or a different outcome in the trial would have followed. Accordingly, the court summarily dismissed Garcia's amended petition. Garcia appeals.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

3

## III.

## ANALYSIS

Garcia argues that his trial counsel was deficient for not requesting a jury instruction on justifiable homicide and that the instructions given at trial regarding self-defense, as described in Instruction 31, required additional elements compared to the justifiable homicide instruction, ICJI 1514. Garcia asserts that justifiable homicide is different from self-defense because it does not require that the defendant act reasonably when resisting an actual, ongoing attack. The State responds by arguing that the instructions given at trial accurately reflected the applicable law, counsel was not deficient for failing to press a novel legal theory regarding justifiable homicide instructions, and that Garcia cannot show prejudice.

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor.

4

For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002).

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient, and that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687-88; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

The jury was instructed on self-defense with Instruction 31, based on ICJI 1517, as follows:

> A homicide is justifiable if the defendant was acting in self-defense.
> In order to find that the defendant acted in self-defense, all of the following conditions must be found to have been in existence at the time of the killing/battery:
> 1.  The defendant must have believed that the defendant was in imminent danger of death or great bodily harm.
> 2.  In addition to that belief, the defendant must have believed that the action the defendant took was necessary to save the defendant from the danger presented.

3. The circumstances must have been such that a reasonable person, under similar circumstances, would have believed that the defendant was in imminent danger of death or great bodily injury and believed that the action taken was necessary.

4. The defendant must have acted only in response to that danger and not for some other motivation.

In deciding upon the reasonableness of the defendant's beliefs, you should determine what an ordinary and reasonable person might have concluded from all the facts and circumstances which the evidence shows existed at that time, and not with the benefit of hindsight.

The danger must have been present and imminent, or must have so appeared to a reasonable person under the circumstances. A bare fear of death or great bodily injury is not sufficient to justify a homicide. The defendant must have acted under the influence of fears that only a reasonable person would have had in a similar position.

The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was not justifiable. If there is a reasonable doubt whether the homicide was justifiable, you must find the defendant not guilty.

Justifiable homicide is described in I.C. § 18-4009, which, at the time, stated in pertinent part: "Homicide is also justifiable when committed by any person in either of the following cases: (1) When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person."

Garcia first argues that "the justifiable homicide instruction is used when the defendant is undergoing an actual, ongoing attack, as Mr. Garcia was, and the self-defense instruction is used when there is an anticipated attack." Garcia points out that in *State v. Hall*, 161 Idaho 413, 387 P.3d 81 (2016), the Supreme Court noted that for the justifiable homicide statute to apply, the defendant must have been resisting an actual, ongoing attack. *Id.* at 429, 387 P.3d at 97. Indeed, the statute uses the phrase "when resisting," which implies an ongoing attack. I.C. § 18-4009(1). While justifiable homicide applies in the situation of an ongoing attack, nothing precludes a self-defense instruction in the context of an anticipated attack as well as an ongoing attack. That Garcia may have been undergoing an ongoing attack before he acted in no way precludes a self-defense instruction, as it applies in both situations. Certainly, in a non-lethal situation, resisting in an ongoing attack would support a claim of self-defense.

Garcia argues that:

[Section] 18-4009(1) justification for homicide is different from self-defense as established in I.C. § 18-4009(3) because it (1) does not require the defendant's fear of death or great bodily injury to be objectively reasonable; (2) does not require the

6

defendant's use of force to be solely motivated by that objectively reasonable fear;[1] and (3) does not require the extent of the force used by a defendant to be objectively reasonable.

Stated differently, Garcia argues that his construction of the statutes provides that in an ongoing attack, a defendant may unreasonably deploy lethal force based on an unreasonable fear of great bodily injury.

With regard to fear, Garcia points out that in 2018, I.C. § 18-4010 was repealed. That statute provided:

> A bare fear of the commission of any of the offenses mentioned in *subdivisions 2 and 3 of the preceding section*, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

(Emphasis added.) Garcia contends that since the statute was specific to subsections (2) and (3), and whereas this case relates to subsection (1), it implied that subsection (1) required no more than a bare fear. In contrast, the self-defense instruction requires, similar to I.C. § 18-4010, action based on influence of fears of a reasonable person in the circumstance. Thus, Garcia asserts that the justifiable homicide defense was available to him even if "his fear of great bodily harm or death was unreasonable." As an initial matter, the fact that I.C. § 18-4010 applied only to subsections (2) and (3) provides no basis to imply any level of fear applicable to subsection (1). Simply because I.C. § 18-4010 made clear that a defendant's beliefs and actions under subsections (2) and (3) must be objectively reasonable does not mean a defendant's beliefs and actions may be *unreasonable* under subsection (1), such that a reasonableness instruction would misstate the law of justifiable homicide.

In *Hall*, the Court stated that the reasonableness of fears language in I.C. § 18-4010 did not apply to subsection (1). *Hall*, 161 Idaho at 418, 387 P.3d at 86. The Court held that a justifiable homicide instruction was inappropriate under the facts of the case because there was insufficient evidence of an ongoing attack. *Id*. at 424-25, 387 P.3d at 92-93. However, the Court held that it

---

[1] Garcia does not argue that his actions were not solely motivated by his fear. Even if one could argue that taking action resulting in a homicide could be justifiable even if motivated by something other than fear from the attack, trial counsel could not be faulted for failing to request such an instruction when the evidence and the defense were that Garcia acted in response to the attack and his fear therefrom.

was not error to instruct the jury regarding the reasonableness of the defendant's state of mind. *Id.* at 431, 387 P.3d at 99.

Self-defense with a deadly weapon is permitted only where the accused has reasonable cause to believe, and does believe, he is in danger of great bodily injury. *State v. Rodriguez*, 93 Idaho 286, 291, 460 P.2d 711, 716 (1969). Self-defense is only a justifiable excuse for homicide when reasonable. *State v. Iverson*, 155 Idaho 766, 773, 316 P.3d 682, 689 (Ct. App. 2014). The right of self-defense in Idaho has long been grounded in the concept of the reasonable person. *Id.* at 774, 316 P.3d at 690. When analyzing a case in the context of self-defense, the defendant's actions are not completely immune to being assessed against the reasonableness standard. *Id.*

In *State v. Grover*, 35 Idaho 589, 207 P. 1080 (1922), the defendant was subject to an actual, ongoing attack. The central issue in that case was whether Grover's use of force was objectively reasonable. In holding that Grover permissibly acted in self-defense, the Idaho Supreme Court made clear that a defendant's use of force must be reasonable--even in the face of an actual, ongoing attack:

> If appellant was attacked by deceased with a shovel in the manner as testified to by him, he was clearly justified in defending himself, and the homicide was justifiable, upon the ground that he had a right to protect his life or to avoid receiving great bodily injury at the hands of deceased, *provided he was in present fear and used no greater force than was necessary in view of the exigencies of the situation as it appeared to him as a reasonable man.*

*Id.* at 598, 207 P. at 1083 (emphasis added). Idaho law applies a reasonableness standard in the case of an actual ongoing attack.[2] Garcia's argument would create a scenario of a defendant who is physically resisting an actual, ongoing attempt to inflict great bodily harm, yet he does not believe there is any danger of harm and does not believe he is taking necessary actions to save himself. Therefore, Garcia's claim that justifiable homicide requires less than self-defense because it does not require: (1) the defendant's fear of death or great bodily injury to be objectively reasonable; (2) the defendant's use of force to be solely motivated by that objectively reasonable fear; and (3) the extent of the force used by a defendant to be objectively reasonable, is without merit.

---

[2]    Even so, there is nothing in the facts of this case, particularly as described by Garcia, that would suggest that he or any of the participants in the altercation had only a bare fear of attack. Counsel cannot be faulted for not requesting a justifiable homicide instruction, even if a bare fear was all that was necessary, when the subjective fear was not at issue. Moreover, one involved in defense of an ongoing attack has more than a bare fear.

8

Further, the requirements described in ICJI 1514 for justifiable homicide were adequately covered by Instruction 31. For a defendant to resist an actual, ongoing attack, the defendant would necessarily believe such an attack was actually happening. Therefore, while the jury is assessing the response to such an attack, "the defendant's actions in this regard are not completely immune to being assessed against the reasonableness standard." *Iverson*, 155 Idaho at 774, 316 P.3d at 690.

At trial, Garcia testified that he only stabbed Daviel and Rosales after he was attacked: "I thought it was the only way I could defend myself. I didn't use my knife because I was angry or mad. I was scared for my life." When asked by his defense counsel on direct examination as to why he used his knife, Garcia again stated, "To defend myself." This is a quintessential claim of self-defense. As such, Garcia's trial counsel requested, and was granted, jury instructions that covered the law of self-defense in Idaho. The self-defense instructions, as described in Instruction 31, including the instructions regarding the reasonableness of the defendant's actions, were appropriate under the facts and were a correct and pertinent statement of the law in Idaho.[3] The jury had to determine whether Garcia's actions in stabbing Daviel were reasonable under the circumstances. Such an analysis is consistent with the instructions under ICJI 1514 for justifiable homicide, as well as ICJI 1517, when addressing the defendant's reasonable belief of the imminent danger and whether his actions were necessary. Under either instruction, and consistent with Idaho law, the jury must consider the reasonableness of the defendant's beliefs and response to such dangers. The jury was correctly instructed on the law.

Garcia argues that counsel's choice of instructions "was not a tactical decision, but was based on ignorance of the law." We disagree. Counsel's affidavit states that he and co-counsel decided on the jury instructions based on their understanding of the facts and the law regarding self-defense and justifiable homicide. Specifically, the affidavit states: "[Co-counsel] and I do not have any specific recollection of any conversations between us where we made a tactical decision not to request the Court give a justifiable homicide instruction under ICJI 1514, rather than the self-defense instruction we proposed under ICJI 1517."

---

[3] A jury instruction is correct and pertinent unless it is: (1) an erroneous statement of the law; (2) adequately covered by other instructions; or (3) not supported by the facts of the case. *State v. Jeske*, 164 Idaho 862, 872, 436 P.3d 683, 693 (2019).

9

The affidavit, in fact, indicates that counsel made a strategic decision to request ICJI 1517 based on their understanding of the facts and the law at the time, which is consistent with the defense's theory of self-defense at trial. The affidavit does *not* show that counsel was ignorant of the law such that not requesting a justifiable homicide instruction based on ICJI 1514 would constitute deficient performance. Garcia's assertion that not requesting ICJI 1514 was based on ignorance of the law is conclusory and is unsupported by the record on appeal. *See Leonard v. State*, ___ Idaho ___, ___, 559 P.3d 334, 340 (Ct. App. 2024).

Requesting jury instructions, and objecting to proposed instructions, are part of counsel's strategic and tactical decisions. Nothing in the record would suggest that counsel were unprepared for trial, nor does the record show they were ignorant of the law. The affidavit shows that counsel were aware of the law surrounding self-defense and justifiable homicide. After having reviewed ICJI 1514 and ICJI 1517 with co-counsel, counsel also states in his affidavit:

> Therefore, [co-counsel] and I believe that any argument that we might have made in support of a proposed justifiable homicide jury instruction under ICJI 1514 would have been similar to the argument that we made during Mr. Garcia's trial in support of our proposed self-defense jury instruction under IJCI 1517.

Garcia has failed to present any facts which would give rise to a genuine issue as to whether counsel's performance fell below an objective standard of reasonableness. *Pratt v. State*, 134 Idaho 581, 584, 6 P.3d 831, 834 (2000).

As to prejudice, Garcia argues that had the jury been instructed on justifiable homicide under ICJI 1514, there is a reasonable probability that the outcome at trial would have been different. The basis of this argument is that the jury need not consider the reasonableness of the defendant's actions when addressing justifiable homicide. As explained above, this is inconsistent with the law in Idaho. *See Iverson*, 155 Idaho at 774, 316 P.3d at 690 ("[T]he defendant's actions in this regard are not completely immune to being assessed against the reasonableness standard."). Garcia failed to raise a genuine issue of material fact supporting his ineffective assistance of counsel claim and, therefore, the district court did not err in summarily dismissing his amended petition for post-conviction relief.

## IV.

## CONCLUSION

The district court did not err in summarily dismissing Garcia's amended petition for post-conviction relief.  Therefore, the judgment of the district court summarily dismissing the amended petition for post-conviction relief is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.